## FIELD *vs.* WATKINS.

In a court of law, parol testimony cannot be introduced, to alter or vary the terms of a written agreement.

Unless demands be between the same parties, and mutual subsisting rights, they cannot be set off in a proceeding by garnishment.

But how far a party would be able, in a court of equity, to have his set off—*quere.*

THIS was a proceeding by garnishment, determined in Pulaski circuit court, in December, 1843, before the Hon. JOHN C. P. TOLLISON, special judge. On the 28th April, 1843, Watkins sued out a writ of garnishment against Field, reciting that on the 12th March, 1841, he had obtained judgment against John W. Johnston, and another, for $970, debt, and $19 72, damages, besides costs, which judgment remained unsatisfied: that he had reason to believe, that Field had in his hands, goods, chattels, moneys, credits, and effects of Johnston, and was also indebted. The writ was in the usual form. At the return of the writ, Watkins filed allegations and interrogations, to be responded to by Field: who thereupon answered under oath, that on the 10th May, 1839, Johnston sold him sixty shares of stock in the Real Estate Bank, and covenanted to transfer the same free of incumbrance, as soon as the forms of transfer should be settled by the central board of said Bank, and he should be required by said Field. Upon this being done, Field was to pay Johnston $900, in Arkansas money, though the agreement called for dollars. A part of the agreement was made part of the answer. The forms of transfer were settled by said Board, and J. required to make the transfer in the autumn of 1839, or winter of 1840, according to the terms of the agreement. That J. did not transfer, and wholly refused so to do, in accordance with the terms of the agreement: admitted that an informal transfer of fifty shares was made, at fifteen dollars premium per share, in Arkansas money. That in 1841, judgment was rendered in said court against Field, as the security of Johnston, in favor of one E. D., for $1,000, which remains in full force and unsatisfied: that in December, 1842, another judgment was obtained in the same court, against Field, as security for Johnston, in favor of the Real Estate Bank, for $2,370, besides interest and costs, which remains in full force and unsatisfied: that Johnston and the co-securities of Field, are insolvent, and he will have

Field *vs.* Watkins.

to pay both judgments. That he paid J. towards the shares transferred, $100 or $150, and does not recollect which. That he is not, nor was indebted to J. in any other manner, than as stated, and had no goods, chattels, moneys, credits, or effects in his hands, belonging to J., and therefore, insisted, that he had the right to withhold the balance due on the fifty shares transferred, to indemnify himself for his liabilities on the judgments aforesaid. Upon the coming in of the answer, the court rendered judgment against Field for $750, besides costs. Field brought error.

*Hempstead & Johnson,* for plaintiff.

*Ashley & Watkins,* contra. The contract for stock between Field and Johnston, contained no condition precedent by which Field could avoid the payment of the consideration. *Sayre vs. Craig,* 4 *Ark. Rep.* 15. So the allegation of the garnishee, that Johnston only conveyed 50, instead of 60 shares, and the insinuation that the transfer of those, was illegal, avails nothing—because the garnishee owed Johnston, the consideration for which he had a right of action subject to be garnisheed for his debts, and if Johnston failed to comply with his contract, Field had his right of action. *Webster vs. Gage & Trustees,* 2 *Mass. Rep.* 503.

But suppose the covenants in the contract of Field and Johnston, to be dependent—Field cannot avail himself of it in discharge, because he waived it by accepting a transfer of 50 shares of the stock, which he *still holds*—notwithstanding he has a vague idea, that it is invalid, and without any offer to tender it back or cancel the contract, and by the subsequent payment to Johnston on account of this stock, of $100 or 150, he does not know which.

Field cannot vary or explain the plain and express terms of his contract, by showing, that although he agreed to pay dollars, he meant Arkansas bank notes or property. He might do this by bill in chancery, if he alleged fraud, accident, or mistake in the execution of the contract. *Trowbridge & Jennings vs. Sanger,* 4 *Ark. Rep.* 179. *Featherston vs. Wilson, ib.* 154.

The allegation of the garnishee, that he had become the security

of Johnston, and *expected* to have to pay the debts for him, is no discharge either by way of payment or offset. *Hatheway vs. Russell,* 16 *Mass. Rep.* 476. As to what demands one who is summoned as trustee, may be allowed against his principal. *Greenough vs. Walker et al. & Trustee,* 5 *Mass. Rep.* 214. *Marine Insurance Co. vs. Weeks & Trustees,* 9 *Mass. Rep.* 438. *Perry vs. Coats & Trustees,* 9 *Mass.* 537.

The garnishee must state facts, and not conclusions of law, and in stating facts, if his statement is doubtful in any part, it will be construed against him, for he might have used expressions in which there would be no doubt. *Cleveland vs. Class,* 5 *Mass.* 201. *Sebor vs. Armstrong & Trustee,* 4 *Mass.* 206.

If Johnston could have maintained his action against Field for $900 less, the $100 paid—the court rendered judgment on the garnishment for less than was due. But suppose Field owed for the 50 shares only $750, he owed that amount with interest from the date of the contract, and after allowing him credit for $100, the balance with interest up to the date of the judgment, would be at least $750.

According to the law settled in the case of *Walker vs. Bradley,* 2 *Ark.* 597, it was not necessary for the plaintiff to put the allegations of the answer in issue, when the garnishee has rendered himself liable by his own showing.

*By the court,* LACY J. This is a suit of garnishment and depends upon a proper construction to be put upon the defendants answer. The defendant states that he purchased by covenant from one John W. Johnston, sixty shares of stock in the Real Estate Bank, for the sum of $900, which was to be transferred free from incumbrance, so soon as the central board made out the forms of transfer; that these forms were never regularly made out or fixed by the central board, nor did Johnston ever convey to him agreeably to his covenant, the amount of stock designated, but that he transferred fifty shares in an irregular manner, which was accepted by the defendant, and for which he was to give him $750 in Arkansas paper. The answer then alleges, that Johnston is owing him for his securityship, large amounts, which appear of record, and that Johnston and this defendant's co-securities

are insolvent, and the defendant seeks to set off his indebtedness against the demand of fifty shares of stock, and alleges that there has been $100 or $150, paid upon the purchase of said stock, for which the defendant is entitled to a credit. The covenant of the agreement between Johnston and the defendant is made part of the answer, and by that exhibit it is manifest that in a court of law the defendant cannot introduce parol testimony, to alter or vary the terms of the written agreement. It is a contract for the purchase of so much stock for so many dollars, and it is not competent in a court of law, to show that the agreement was for so much Arkansas paper, whatever he might do in a court of equity, by alleging and proving that fact, or Johnston's admitting it to be true. The defendant has no right to set off his demands against Johnston for securityship in this form of action. The authorities upon this point are clear. The demands are not between the same parties, nor are they mutual subsisting rights. How far the defendant may be able to avail himself of this defence in a court of equity, by proving the insolvency of Johnston and his co-securities, is a question not now before us, and, of course, upon which we express no opinion. It is perfectly manifest, that the judgment in this instance, is erroneous, and must be reversed, for it does not give the defendant his just credits, to which he was clearly entitled by his answer. Judgment reversed.

*Hempstead & Johnson,* for plaintiff.